O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ELIZABETH A. JONES,  )<br>       )<br>          Plaintiff,  )<br>       )<br>     v.  )<br>       )<br>MICHAEL J. ASTRUE,  )<br>Commissioner of the Social  )<br>Security Administration,  )<br>       )<br>          Defendant.  )<br>_____) | Case No. CV 10-4204-MLG<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Elizabeth Jones seeks judicial review of the Social Security Commissioner's denial of her application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits("SSI") pursuant to Titles II and XVI of the Social Security Act. For the reasons stated below, the decision of the Commissioner is reversed, and the matter is remanded for an award of benefits.

**I.   Facts and Procedural Background**

Plaintiff was born on August 1, 1954. She completed high school and some college and has worked as a help desk supervisor, travel agent, and officer manager. (Administrative Record ("AR") at

145-52, 196.) Plaintiff filed applications for SSDI and SSI on August 21, 2006, alleging disability as of August 21, 2003, due to fibromyalgia, chronic pain, and Epstein Barr Virus. (AR at 146.) Her application was denied initially and upon reconsideration. (AR at 84, 89.) An administrative hearing was held on August 4, 2008, before Administrative Law Judge ("ALJ") Joel B. Martinez. (AR at 22-76.) Plaintiff was represented by counsel and testified on her own behalf. Medical expert Dr. David Brown and vocational expert ("VE") Rita King also testified at the hearing. (Id.)

ALJ Martinez issued an unfavorable decision on August 29, 2008. (AR at 13-21.) The ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through her date last insured of December 31, 2008, and that Plaintiff suffered from the following severe impairments: Epstein Barr Virus, fibromyalgia, and depression. (AR at 15.) These severe impairments, alone or in combination, did not meet the requirements of a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff could not return to her past relevant work, but retained the residual functional capacity ("RFC") to perform light work,[1] "except that she can perform postural activities occasionally, cannot work at heights or around dangerous equipment, cannot be exposed to concentrated fumes, dust, gases, cannot be exposed to extreme temperatures, and can perform simple

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds...[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

work." (AR at 15-19.)  Finally, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs in the national and local economy that Plaintiff could perform based on the testimony of the VE. (AR at 19-20.)

The Appeals Council denied review on April 8, 2010, and Plaintiff commenced this action on June 7, 2010. Plaintiff contends that the ALJ (1) failed to provide clear and convincing reasons for discrediting her subjective symptom testimony, and (2) erred in failing to find that chronic fatigue syndrome was a severe impairment. (Joint Stip. at 3.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming

or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. Discussion

### A. The ALJ Improperly Rejected Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discredit her subjective symptom testimony. At the hearing, Plaintiff testified that her impairments cause nausea, achiness throughout her body, irritable bowel, neuropathy in her hands and feet, and chronic pain, especially in her seat, back, and the bottoms of her feet. (AR at 43, 48-50.) She takes two to three Vicodin per day on average and suffers from significant fatigue such that she "can sleep for 14 hours and wake up exhausted." (AR at 52.) In addition, Plaintiff testified that she experiences confusion and brain fog, which she described as not being able to think of words or trying to say something and having it come out wrong. (AR at 52-53.) Plaintiff testified that she can stand for five minutes, sit for approximately 20 minutes, and lift 10 pounds. (AR at 45.)

Plaintiff further testified that she lives with her elderly father and her 28-year-old son. She wakes up between 11:00 a.m. and noon, but does not get moving until about 2:00 p.m. or 3:00 p.m. (AR at 46, 52.) Once she's up, she may do a load of laundry or fix dinner for her father. She also watches her father take his medication and watches him walk in the yard to ensure he does not wander off or try to drive. (AR at 46.) Visiting nurses have come

to the home when her father has needed "injections and different things," and someone comes to clean the house every two weeks. (AR at 47.)

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter* 504 F.3d at 1035-36). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain is reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[2]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing

---

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

5

reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. *Id.* (citations omitted).

Here, the ALJ concluded that Plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms." (AR at 17.) However, the ALJ rejected Plaintiff's description of her symptoms "to the extent they are inconsistent" with the RFC allowing for simple, light work with additional postural, odor, and temperature limitations. Practically, this means that the ALJ rejected Plaintiff's testimony that she suffers from nausea and chronic pain, sleeps much of the day, and is limited in her ability to walk, sit, stand, and lift more than 10 pounds. Because there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting this testimony.

The ALJ provided four reasons for rejecting Plaintiff's testimony. First, the ALJ stated that "[t]he objective medical

findings generally do not substantiate the extent of [Plaintiff's] allegations." (AR at 17.) The ALJ then summarized the medical evidence from 2003 to 2008, and concluded that "[t]he overall evidence does not show that the degree of severity of [Plaintiff's] impairments is commensurate with [her] allegations of disability." (Id.) However, the ALJ had already concluded that Plaintiff's fibromyalgia was a severe impairment that could be expected to produce the symptoms she described. In light of those conclusions, the ALJ was not entitled to discredit Plaintiff's testimony merely because the objective evidence did not corroborate the severity of the symptoms. *Reddick*, 157 F.3d at 722; *Bunnell*, 947 F.2d at 345; *Light v. Soc. Sec. Admin*, 119 F.3d 789 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain...a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.") (internal citation omitted). Moreover, the symptoms described by Plaintiff are not inconsistent with the objective medical evidence from 2003 to 2008. Although the records indicate that Plaintiff experienced some relief in fibromyalgia symptoms in July 2004, characterized by the treating rheumatologist as a "complete cure," (AR at 312-314), that relief was brief and Plaintiff's symptoms had returned by January of 2005. (*See* AR at 253-55.) This relatively brief reprieve does not in and of itself demonstrate that Plaintiff's testimony at the August 2008 hearing regarding her current symptoms was inconsistent or unsupported by the objective medical evidence.

Next, the ALJ discredited Plaintiff's symptom testimony based on her daily activities. A disability claimant's daily activities

"may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). Here, the ALJ found that Plaintiff's daily activities detracted from her credibility by summarizing a November 2006 Adult Function Report:

> [Plaintiff] reported in November 2006 that she makes breakfast, does a load or two of laundry, puts dishes in the dishwasher, takes care of her 91-year-old father, has no problems with personal care, wipes down counters and bathroom sinks, does shopping, and handles finances. These are fairly normal activities of daily living.

(AR at 19; *see also* AR at 351-58.) As characterized by the ALJ, the November 2006 function report does reflect "fairly normal" daily activities. However, examination of the November 2006 report reveals that the ALJ improperly emphasized only the positive aspects of the report and ignored significant limitations that were consistent with Plaintiff's hearing testimony. *See Campbell v. Astrue*, 2009 WL 3244745, at *5 (C.D. Cal. Oct. 7, 2009) (noting that an ALJ "must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings") (citing *Reddick*, 157 F.3d at 722-23). For example, Plaintiff did write that she makes cereal and coffee when she wakes up, but also wrote that she eats it in bed, takes morning pills, and then dozes off until noon. (AR at 351.) Once up, she dresses, showers if necessary, "make[s] sure [her] father has lunch and his meds," does a load or two of laundry, and then takes a nap.

When she wakes up from her nap, she checks the mail, gets a sandwich for dinner, and is normally in bed by 7:00 p.m. (Id.)

A fair reading of the report reflects minimal activity, a nap between noon and 7:00 p.m on a normal day, and the remainder of her time spent resting in bed. Rather than demonstrating that Plaintiff spends a "substantial part of [her] day" engaging in activities that are transferable to a work setting, the function report reflects a person who is significantly limited in her ability to complete everyday tasks. It is consistent with her hearing testimony. Moreover, in addition to selectively emphasizing portions of the November 2006 function report, the ALJ simply ignored numerous other function reports that were consistent with Plaintiff's hearing testimony and reflected limited daily activities due to pain and fatigue. (*See* AR at 187-89, 191-93, 206-07.) The ALJ's conclusion that Plaintiff's "fairly normal" daily activities detract from her credibility is not supported by substantial evidence in the record and thus does not provide a clear and convincing reason to reject her testimony. *See Orn*, 495 F.3d at 639; *accord Jefferson v. Astrue*, 2010 WL 4366389, at *5-6 (C.D. Cal. Oct. 26, 2010) (ALJ improperly discredited claimant where claimant spent much of the day in bed and did not spend a "substantial" portion of her day engaged in activities transferable to work); *Lualhati v. Astrue*, 2010 WL 3001208, at *10-11 (N.D. Cal. July 29, 2010) (same).

The ALJ's third reason for rejecting Plaintiff's testimony is similarly problematic. The ALJ stated:

> [Plaintiff's] statements at the hearing were not entirely convincing. She testified that she could sit only 20

>   minutes. However, she sat at the hearing for twice to three times as long. Thus, I believe the claimant underestimated her ability to sit. The lack of consistency between her assertions and her actual ability is rather troubling and casts doubt on her credibility.

(AR at 19.) This reasoning is troublesome for two reasons. First, it ignores the difficulty Plaintiff had sitting through her own testimony at the hearing. When the ALJ asked Plaintiff for how long she could sit, she replied "I'm getting to my limit." (AR at 45.) The ALJ pressed her, asking her the same question again, and she responded that she can sit for 20 minutes. (Id.) Based on this, and apparently the total length of the hearing, the ALJ concluded that Plaintiff was inconsistent and lacked credibility. As with her daily activities, the ALJ selectively emphasized the facts that supported his conclusion and failed to acknowledge that it was difficult for Plaintiff to sit through her testimony. Moreover, the Ninth Circuit has concluded that this type of "sit and squirm" evaluation is not a sufficient reason to deny benefits. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). Because the ALJ failed to cite other proper reasons for discrediting Plaintiff, this observation alone would not be sufficient to make an adverse credibility finding, even if it were a fair portrayal of what occurred at the hearing.

Finally, the ALJ reasoned that Plaintiff's attempts to return to work made her testimony about her symptoms incredible:

>   [Plaintiff] testified that she would have accepted jobs with her prior employer in June 2005 and June 2006 had she been offered a job. It appears that she believed she

10

> had the physical and mental capacity for work, as evidence by her contact with her prior employer and her statement that she would have accepted the job. After she was turned down by her prior employer, she did not look for work because she felt disappointed and felt unwell.

(AR at 19.) This reasoning was based on Plaintiff's testimony that on two occasions, she asked her former employer to hire her back in a less demanding position than the one she left on her alleged onset date. Plaintiff testified that her former boss did not hire her back in 2005 because "she could tell by looking at me that I wasn't ready." (AR at 40-42.) When asked why she would have gone back to work for her former employer but did not "tr[y] a different place," Plaintiff stated: "I think probably I thought they understood me more, and they could deal with my illness more. My illness was not gone." (AR at 42.)

Here again, the ALJ unreasonably construed Plaintiff's testimony to bolster his desired conclusion. Rather than reflect a belief by Plaintiff that she could return to work because she was not experiencing limiting symptoms, Plaintiff's testimony reflects her belief that her former employer would be more lenient and understanding of the limitations due to their preexisting relationship. Plaintiff's testimony that she wanted to go back to work does not contradict her symptom testimony, especially in light of the fact that her former employer refused to hire her because she believed Plaintiff was not physically capable of performing the job. *See Lingenfelter v. Astrue*, 504 F.3d at 1040 (holding that claimant's unsuccessful attempt to work did not constitute a clear and convincing reason to reject claimant's symptom testimony);

*Meeker v. Astrue*, 2010 WL 56016. At *5 (E.D. Wash. Jan. 5, 2010) (finding that claimant's unsuccessful attempt to perform "more than sedentary work" did not prove that claimant was not credible, but concluding that ALJ relied on other proper reasons for discrediting claimant); *Wright v. Astrue*, 2009 WL 2827576, at *13 (D.Or. Aug. 24, 2009). Thus, Plaintiff's wholly unsuccessful attempts to secure work with an employer who she believed would understand and accommodate her limitations does not demonstrate that she misrepresented her symptoms and was capable of working.

In sum, each of the ALJ's four reasons for rejecting Plaintiff's testimony was either legally improper or unsupported by substantial evidence in the record.

**B.  Award of Benefits**

Upon determining that the Commissioner erred in denying benefits, the Court may remand the case for further proceedings or award benefits. When an ALJ fails to provide proper reasons for discrediting a claimant's symptoms, courts have "some flexibility" in determining the appropriate remedy. *Vasquez*, 572 F.3d at 593 (citing *Connett*, 340 F.3d at 876). In general, crediting a claimant's testimony as true is appropriate where an ALJ has failed to provide adequate reasons for rejecting the testimony, there are no outstanding issues to be resolved before a determination of disability can be made, and it is clear that the ALJ would be required to find the claimant disabled if the testimony was credited. *Crismore v. Astrue*, 669 F.Supp.2d 1194, 1202-03 (D.Mont. 2009) (citing *Smolen*, 80 F.3d at 1293, and analyzing recent cases).

Here, the ALJ failed to provide legally proper reasons for discounting Plaintiff's testimony and the VE's testimony indicates

that no jobs would be available if Plaintiff's testimony were credited as true. The VE testified that if a person had Plaintiff's limitations as described by the ALJ, and was additionally limited to standing and walking for no more than two hours per day, the person would be limited to sedentary work rather than light work. In addition, the VE stated that no jobs would be available if such a person would be absent from work twice a month. (AR at 72-74.) These limitations do not even capture the full extent of Plaintiff's symptoms. For example, they do not account for her limitations on sitting and the need for a nap during the afternoon. Thus, if Plaintiff's testimony were credited as true, it is quite clear that no jobs would be available in the national or local economy, and the ALJ would be required to find Plaintiff disabled. There being no outstanding issues to resolve through further administrative proceedings, an award of benefits is appropriate.[3]

**IV.  Conclusion**

For the reasons stated above, the decision of the Commissioner reversed, and the matter is remanded for an award of benefits

Dated: February 25, 2011

_____
Marc L. Goldman
United States Magistrate Judge

---

[3] Given that Plaintiff is entitled to benefits based on the ALJ's error in rejecting her symptom testimony, it is unnecessary to resolve her second claim of error regarding whether the ALJ erred in failing to find that Chronic Fatigue Syndrome constitutes a severe impairment.